FILED

2014 Dec-04  AM 09:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **ED CROWE, an individual,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No.:** |
| **MAIN STREET ACQUISITION** | ) | |
| **CORPORATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

**COMES NOW** the Plaintiff, by and through counsel, and for Plaintiff's Complaint against the Defendant states as follows:

1.     This action arises out of Defendant's repeated violations of the Fair Debt Collection Practices Act[1] (15 U.S.C. § 1692 et seq. [hereinafter "FDCPA"]), out of state law violations and out of the invasion of Plaintiff's personal and financial privacy by the Defendant and its agents in its illegal efforts to collect a consumer debt from Plaintiff.

2.     The Plaintiff was sued for a debt Plaintiff did not owe.

---

[1] Any reference the FDCPA or any part thereof encompasses all relevant parts and subparts thereto.

3.      Defendant Main Street Acquisition Corporation never had any intention of offering any proof at trial.

4.      Instead, the lawsuit against Plaintiff was filed in a hope of obtaining a default judgment or coercing Plaintiff into paying on a debt Plaintiff did not owe.

5.      This is the pattern of collection activity by Defendant Main Street Acquisition Corporation in its collection lawsuits in Alabama.

6.      The Plaintiff won the lawsuit.

## JURISDICTION

7.      Personal jurisdiction exists over the Defendant as it has the necessary minimum contacts with the State of Alabama and this suit arises out of its specific conduct with Plaintiff in Alabama.  All the actions described in this suit occurred in Alabama.

8.      Subject matter jurisdiction exists under federal question jurisdiction (28 U.S.C. Section 1331) and through diversity jurisdiction (28 U.S.C. Section 1332) as the amount claimed exceeds $75,000.00 between these diverse parties.

## VENUE

9.      Venue is proper as Plaintiff lives in this judicial district, the events took place in this judicial district, and the Defendant does business in this judicial district.

## PARTIES

10.    Plaintiff  Ed Crowe (hereinafter "Plaintiff") is a natural person who is a resident of this judicial district in Alabama, and is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

11.    Defendant Main Street Acquisition Corporation, ("Defendant" or "Main Street[2]") is a foreign debt collection firm that engages in the business of debt collection in this judicial district in Alabama.  It is a "debt collector" under the FDCPA.  It is incorporated in Delaware and has its principal place of business in Nevada.

12.    Defendant Main Street, upon information and belief, allegedly buys defaulted consumer debt.

## BACKGROUND INFORMATION ON DEBT BUYER LAWSUITS  BY MAIN STREET IN ALABAMA

13.    This case represents a growing trend in the debt collection and credit reporting industries.

14.    First, a debt buyer such as Main Street which claims to buy the Plaintiff's debt for pennies on the dollar will sue the Plaintiff in small claims or district court.

15.    While the debt buyer will claim that it has accurate records, this is not true.

---

[2] "Main Street" means Main Street directly or through its debt collectors, employees and agents and the collection law firm that sued Plaintiff, credit reported against Plaintiff, or otherwise took any collection action against Plaintiff.

16. The purchase agreement between the original creditor and the first debt buyer will state that there is no promise or representation as to the accuracy of the information sold to the first debt buyer.

17. That first debt buyer cannot represent any greater quality to any subsequent debt buyer.

18. In any event, one of the debt buyers, in this case Main Street, will sue the Alabama consumer.

19. Main Street will hire a collection law firm to file the suit.

20. Generally, most consumers default as they assume if a lawsuit has been filed, it must be legitimate.

21. Occasionally, however, the consumer will file an answer and deny owing money, and Main Street knows it will likely lose the case.

22. The reason is that Main Street knows that in virtually every case it will be unable (or unwilling) to prove that the consumer owes this debt to Main Street.

23. The debt buyer Main Street has no intention of proving its case.

24. No witness will be provided by Main Street.

25. No admissible evidence will be presented in court.

26. The entire model is based upon filing a high volume of cases, obtaining default judgments, and never having to make any effort to prove the allegations of the lawsuit.

27.   When resistance is provided, Main Street knows the case will be lost as it has no evidence, no witness, and no intention of proving the case.

28.   This is a reality that Main Street prefers to keep secret from consumers in Alabama.

29.   The case gets set for trial.

30.   The judge rules in favor of the consumer at the trial as Main Street offered no evidence.

31.   Main Street did not even make an effort to offer any evidence.

32.   Main Street has 14 days to appeal from an adverse judgment in Alabama Small Claims or Alabama District Court.

33.   Main Street does not appeal.

34.   Main Street knows that losing its case means under Alabama law that the debt is not owed by the consumer to the debt buyer.

35.   Since the debt is not owed, collection efforts must cease.

### Defendant Main Street's Boldness In Suing Plaintiff Twice on Same Debt

36.   While normally this would not be an unusual case, in that debt buyers file bogus suits every day, what is unusual is the boldness and lack of remorse shown by Defendant Main Street after it had been caught.

37.   It is quite common for debt buyers, such as the Defendant Main Street, to file bogus lawsuits with no proof.

38.   It is common for debt buyers such as Defendant Main Street to file lawsuits with no intention to prove the lawsuit.

39.   It is common for debt buyers such as Defendant Main Street to provide counsel with no admissible evidence to be used at trial.

40.   And it is even common for debt buyers such as Defendant Main Street to continue to collect after losing the collection lawsuit.

41.   This is true even though debt buyers such as Defendant Main Street know that losing the case in an Alabama state court means that no debt is owed by the consumer to the debt buyer.

42.   Usually this collection is of a more subtle, but still damaging, variety such as credit reporting, an occasional letter, perhaps a phone call, or even selling the non-existent debt to another debt buyer.

43.   When a non-existent debt is sold from one debt buyer to another, they both know that there is no basis to collect the non-existent debt.

44.   This is not a problem when one considers the mindset of the debt buyers is to bring suits with no proof because there is little, if any, downside to bringing bogus cases.

45.   This is true because the vast majority of all Alabama consumers who are sued default (believing there is nothing they can do) or they agree to settlements or consent judgments.

46.   So the downside of filing bogus lawsuits is out of hundreds or thousands of such suits, the debt buyer may possibly be sued a time or two.

47.   The debt buyers, such as Main Street, have decided that these odds are sufficient for this practice to continue to be extremely profitable.

48.   But what is unusual about this case is that not only did defendant Main Street file a bogus case, not only did it lose, and not only did it continue to collect, but it collected in such a bold and unashamed way by <u>suing Plaintiff for the identical debt a second time.</u>

49.   Defendant Main Street first sued the Plaintiff in Chilton County, with a case number of DV-2012-900030.

50.   Defendant Main Street lost that case on June 20, 2012 per the Order of Judge Rhonda Jones-Hardesty.

51.   The remarkable thing is that Defendant Main Street is so confident that Alabama consumers will do nothing even in the face of outrageous conduct, that Defendant Main Street sued the plaintiff again.

52.   In the same Court.

53.   This second case has a case number of DV-2014-900083.

54.   The Judge in both cases is the same - Judge Rhonda Jones-Hardesty.

55.   The only thing that has changed is the collection lawyers.

56.   In the first case, Cloud & Tidwell, LLC represented Defendant Main Street.

57. In the second case, Parnell & Crum, PA represented Defendant Main Street.

58. Defendant Main Street knows that while it has no problem filing the same bogus lawsuit twice, it realizes that collection counsel would not agree as to do so violates a whole host of ethical obligations.

59. The amount sued for is not identical - in the first case it was $4,367.68 and in the second case it was $5,244.01.

60. The debt, however, is the same.

61. In the first lawsuit the debt was described as a Direct Merchants Mastercard with an account number of XXXXXXXXXXXX6855, with the last payment being made on October 5, 2009.

62. In the second lawsuit, the debt was described as a Direct Merchants Mastercard  with an account number  of XXXXXXXXXXXX 6855, and the same October 5, 2009 date is referenced.

63. One might reasonably expect that even a bold debt buyer who was willing to file a bogus lawsuit not once but twice would quickly dismiss the case as soon as it realized that the game was up and that it had been caught.

64. Not Main Street.

65. In the answer filed by counsel for Plaintiff, the Defendant Main Street was alerted that it had been caught.

66.  Specifically, Item No. 9 in the answer stated as follows:   "Defendant [Plaintiff Crowe] does not owe Plaintiff [Defendant Main Street] money per the last court case between these parties."

67.  Defendant Main Street did not dismiss the case.

68.  Defendant Main Street did not attempt to remedy this outrageous situation of suing the same person twice on the same bogus debt.

69.  Defendant Main Street did not apologize to Plaintiff.

70.  Instead, the case proceeded to trial and the Judge ruled in favor of Plaintiff, against Defendant Main Street.

71.  Even at this point, Defendant Main Street was not ready to concede.

72.  Counsel for Main Street informed counsel for Plaintiff that Defendant Main Street would decide whether or not to appeal the case to circuit court.

73.  How any case filed after losing the identical first case could be appealed is unknown.

74.  Ultimately, no such appeal was filed, the judgment is a final judgment, and this current case is ready to proceed.

**RECOGNITION OF THE WIDESPREAD ABUSE BY COLLECTORS**

75.  Congress found it necessary to pass the FDCPA due to rampant abusive practices by dishonorable debt collectors.

76.   The conduct by Defendant Main Street is a perfect example in 2014 what consumers are dealing with when being collected upon by debt collectors who violate the law and it shows the problems in 1977 that led to the FDCPA are still present today.

77.   Congress recognized that there are four social ills caused by abusive debt collection:  (1) Unnecessary personal bankruptcies; (2) Marital instability; (3) Loss of jobs; and (4) Invasions of individual privacy.

78.   Congress also found that it is <u>fundamentally unfair</u> for the abusive collection agencies to have an <u>unfair competitive advantage over those honorable debt collectors that decide to obey the law and follow the rules.</u>

79.   15 USC § 1692 is entitled "Congressional findings and declaration of purpose" and it states as follows:

(a)   There is **abundant evidence** of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

(b)   Existing laws and procedures for redressing these injuries are inadequate to protect consumers.

(c)   **Means other than** misrepresentation or other **abusive debt collection practices are available for the effective collection of debts.**

(d)   Abusive debt collection practices are carried on to a substantial extent in interstate commerce and through means and instrumentalities of such commerce. Even where abusive debt collection practices are purely intrastate in character, they nevertheless directly affect interstate commerce.

(e)     It is the **purpose** of this title to **eliminate abusive debt collection practices** by debt collectors, to **insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged**, and to promote consistent State action to protect consumers against debt collection abuses.

[Emphasis added].

## <u>The First District Court Complaint</u>

80.     On February 22, 2012, Defendant Main Street sued Plaintiff in the District Court of Chilton County, Alabama, with a case number of DV-2012-900030.

81.     This suit was filed by the Cloud & Tidwell collection law firm.

82.     In this suit, Defendant Main Street asserted it was the owner of a certain debt allegedly owed by Plaintiff.

83.     Defendant Main Street alleged Plaintiff owed Main Street $3,956.62 plus interest of $411.02 for a total of $4,367.68 on a <u>Direct Merchants Mastercard with an account number ending in 6855</u>.

84.     Defendant Main Street never intended to offer one shred of evidence to prove its case.

85.     This lawsuit, and the other Alabama lawsuits filed by Main Street, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Main Street cannot and will not prove it has any right to collect on.

86.   Another intention of Defendant Main Street was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

87.   Defendant Main Street knew Plaintiff did not owe the debt sued on.

88.   Defendant Main Street made numerous misrepresentations and false statements in the lawsuit.

89.   This suit was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant Main Street in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers.

## Plaintiff Answers The Main Street Lawsuit

90.   Plaintiff did not and does not owe the debt to Main Street.

91.   Plaintiff filed an Answer denying the allegations of Defendant Main Street.

92.   The Answer was filed on March 16, 2012 by Plaintiff's attorney Matt Dunaway.

93.   Defendant Main Street received a copy of this denial.

94.   Defendant Main Street understood that Plaintiff was refusing to pay on this debt.

95.   Defendant Main Street understood that Plaintiff disputed this debt.

96.  Defendant Main Street knew Plaintiff did not owe this debt.

97.  Defendant Main Street knew the statute of limitation had run but pursued the case even though it knew the lawsuit was time barred.

98.  Defendant Main Street made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Main Street knew that there was no merit to the case, but Defendant Main Street sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Main Street.

**The Judge Sets The Main Street Lawsuit For Trial**

99.  District Court Judge Rhonda-Jones Hardesty set the case for trial on June 20, 2012.

100.  At all times Plaintiff was prepared for trial.

101.  At all times Defendant Main Street was unprepared for trial.

102.  Defendant Main Street knew that with its intention to never prove the case, and with a represented Plaintiff, the game was over.

103.  Defendant Main Street had provided no proof to its collection counsel that Defendant Main Street owned the debt.

104.  Defendant Main Street had provided no proof to its collection counsel that Plaintiff owed Defendant Main Street the debt.

105. Defendant Main Street provided no evidence and no witness to its collection counsel at any time prior to the trial and up through the end of the trial.

## The Trial

106. At the trial itself, on June 20, 2012, Main Street showed up with no evidence.

107. As Defendant Main Street supplied its collection counsel with no proof and no witnesses, Defendant Main Street (through collection counsel) had no proof or evidence to even attempt to offer into evidence in the trial of this case.

108. Defendant Main Street offered no testimony from any witness in this case.

109. Defendant Main Street did not question Plaintiff at trial in this case.

110. Defendant Main Street did not have at trial any employee or agent of Defendant Main Street to present evidence or testimony.

111. Defendant Main Street did not question any employee or agent of Defendant Main Street at trial in this case.

112. Defendant Main Street did not have any witness of any type to present evidence or testimony.

113. Defendant Main Street did not question any witness at trial in this case.

114. Defendant Main Street did not even attempt to submit any document into evidence at trial in this case.

115. No evidence of any type was submitted by Defendant Main Street in the trial of this case.

116. Judge Jones-Hardesty entered judgment for Plaintiff Crowe on June 20, 2012.

117. This ended the first case Defendant Main Street filed against Plaintiff.

### The Second District Court Complaint

118. On June 26, 2014, Defendant Main Street sued Plaintiff again in the District Court of Chilton County, Alabama, with a case number of DV-2014-900083.

119. This suit was filed by the Parnell & Crum, PA collection law firm.

120. In this suit, Defendant Main Street asserted it was the owner of a certain debt allegedly owed by Plaintiff.

121. Defendant Main Street alleged Plaintiff owed Main Street $4,247.06 plus interest of $996.95 for a total of $5,244.01 on a <u>Direct Merchants Mastercard with an account number ending in 6855</u>.

122. Defendant Main Street also claimed court costs.

123. Defendant Main Street knows that Plaintiff has never done business with Defendant Main Street.

124. No mention was made in the lawsuit that whoever sold the alleged debt to Main Street disclaimed the accuracy of the records.

125. The statute of limitations had run before Main Street sued Plaintiff.

126. Despite the fact that Main Street knew or should have known that the statute had run, it filed suit on this stale debt against Plaintiff.

127. Given this lawsuit, Defendant Main Street would be expected to have an intention of proving its case.

128. No such intention existed.

129. Defendant Main Street never intended to offer one shred of evidence to prove its case.

130. This lawsuit, and the other Alabama lawsuits filed by Main Street every year, was filed with the intention of getting settlements from pro se consumers and default judgments on debts that Defendant Main Street cannot and will not prove it has any right to collect on.

131. Another intention of Defendant Main Street was to continue to allow the case to move towards trial with the intent that the Plaintiff would be intimidated into paying on a debt not owed and/or would not show up at trial and a default judgment would be entered.

132. Defendant Main Street knew Plaintiff did not owe the debt sued on.

133. Defendant Main Street made numerous misrepresentations and false statements in the lawsuit.

134. Defendant Main Street misrepresented that a debt was owed – none was owed by Plaintiff to Defendant Main Street.

135. This is graphically illustrated by the fact Defendant Main Street lost its initial case against Plaintiff.

136. Defendant Main Street misrepresented the amount owed when Plaintiff owed Defendant Main Street nothing on this account.

137. Defendant Main Street misrepresented that Defendant Main Street had standing and the right to bring the lawsuit when Defendant Main Street did not have standing and did not have the right to bring the lawsuit.

138. Defendant Main Street did not own the debt at the time the lawsuit was filed.

139. Defendant Main Street did not own the debt at any time the lawsuit was pending.

140. Defendant Main Street misrepresented that it intended to prove its case when Defendant Main Street had no intent to prove its case.

141. Defendant Main Street misrepresented that it intended to offer any evidence in the case when Defendant Main Street had no intention of offering any evidence in the case.

142. Defendant Main Street misrepresented that Plaintiff only had 14 days to dispute the debt when the FDCPA clearly provides in § 1692g that a consumer has 30 days.

143. This suit was brought as part of a strategy and policy of scattershot litigation designed to sue Alabama consumers who do not owe the debt to Defendant

Main Street in order to coerce or deceive the Alabama consumers into paying a debt not owed or to receive a judgment against the consumers.

## Plaintiff Answers The Main Street Lawsuit

144. Plaintiff did not and does not owe the debt to Main Street.

145. Plaintiff filed an Answer denying the allegations of Defendant Main Street.

146. The Answer was filed on August 22, 2014.

147. Defendant Main Street received a copy of this denial.

148. Defendant Main Street understood that Plaintiff was refusing to pay on this debt.

149. Defendant Main Street understood that Plaintiff disputed this debt.

150. Defendant Main Street knew Plaintiff did not owe this debt.

151. Defendant Main Street knew the statute of limitation had run but pursued the case even though it knew the lawsuit was time barred.

152. Defendant Main Street understood that Plaintiff knew that Defendant Main Street had filed this second lawsuit after losing the first lawsuit.

153. Defendant Main Street made a conscious choice to continue to allow the lawsuit to move forward even though Defendant Main Street knew that there was no merit to the case, but Defendant Main Street sought to use the lawsuit and the court process to force Plaintiff to pay money on a debt Plaintiff did not owe to Defendant Main Street.

## The Judge Sets The Main Street Lawsuit For Trial

154.   District Court Judge Rhonda-Jones Hardesty set the case for trial on October 8, 2014.

155.   At all times Plaintiff was prepared for trial.

156.   At all times Defendant Main Street was unprepared for trial.

157.   Defendant Main Street knew that with its intention to never prove the case, and with a represented Plaintiff, the game was over.

158.   Defendant Main Street had provided no proof to its collection counsel that Defendant Main Street owned the debt.

159.   Defendant Main Street had provided no proof to its collection counsel that Plaintiff owed Defendant Main Street the debt.

160.   Defendant Main Street informed its counsel that this alleged debt had been sued on and lost by Defendant Main Street in 2012.

161.   Defendant Main Street provided no evidence and no witness to its collection counsel at any time prior to the trial and up through the end of the trial.

## The Trial

162.   As Defendant Main Street supplied its collection counsel with no proof and no witnesses, Defendant Main Street (through collection counsel) had no proof or evidence.

163. Judge Jones-Hardesty entered judgment for Plaintiff Crowe on October 8, 2014.

164. This ended the case Defendant Main Street filed against Plaintiff.

## Remaining Factual Allegations Against Defendant Main Street

165. Defendant Main Street is not the owner of this alleged debt.

166. Defendant Main Street has collected against Plaintiff when Plaintiff did not owe any money to Defendant Main Street on this account.

167. Defendant Main Street has misrepresented the debt to Plaintiff.

168. This includes the amount of the debt as none is owed.

169. This includes the legal status of the debt as none is owed.

170. This includes the false statement that Defendant Main Street intended to offer any proof in the case when it had no such intention.

171. Defendant Main Street has threatened (and actually has) to take action it knows is illegal for Defendant Main Street to take.

172. This includes filing a second lawsuit when the first lawsuit had been lost by Defendant Main Street in 2012.

173. This includes suing on a debt it knew or should have known the statute of limitations had passed,  proceeding to the trial date when Defendant Main Street knew at the time and continues to know that it has no right to proceed to trial on a debt it does not own and that Plaintiff does not owe.

174. Defendant Main Street knew that by its conduct described in this Complaint that the natural consequence – the desired consequence – would be that Plaintiff (and all others similarly situated) would be harassed, oppressed, and abused by the filing of a meritless lawsuit, the filing of a lawsuit on a debt not owed by Plaintiff, the filing of a lawsuit when Defendant Main Street did not own the debt, by misrepresenting numerous facts in the lawsuit, by threatening to take Plaintiff's property and wages, and by all other wrongful acts described in this Complaint.

175. Plaintiff did not and does not owe this money to Defendant Main Street.

176. The alleged debt and contract do not allow for collecting debts not owed by Plaintiff to Defendant Main Street.

177. The debt being collected is a consumer debt as defined by the FDCPA.

178. Plaintiff is a "consumer" as defined by the FDCPA.

179. Defendant Main Street is a "debt collector" as defined by the FDCPA.

180. Defendant Main Street knows it can be sued in Alabama for filing suits with no basis to do so.

181. Defendant Main Street has full knowledge of what it is doing by filing bogus lawsuits and illegal collection activities.

182. Defendant Main Street knows that it is suing Alabama consumers who do not owe the debts being sued upon.

183. Defendant Main Street knows that it is suing Alabama consumers on debts that Defendant Main Street does not own.

184. Defendant Main Street has calculated that the most profitable way to conduct these suits is to file them with no investigation on the merits of the suit, to provide no evidence to collection counsel, to provide no valid evidence for any court to consider, and to use deception and intimidation to force Alabama consumers to pay for debts not owed or to obtain default or consent judgments against the Alabama consumers.

185. Defendant Main Street files numerous lawsuits in Alabama with no intention of proving those lawsuits.

186. Defendant Main Street is counting on the fact that many Alabama consumers will not answer and so default judgments will be entered.

187. This type of "scattershot" litigation strategy is improper, deceptive, and abusive.

188. Defendant Main Street knows that its "scattershot litigation" is improper but it has decided that this is the most effective way to obtain money from Alabama consumers who do not owe the money to Defendant Main Street.

189. The conduct of the Defendant Main Street has proximately caused Plaintiff past and future monetary loss, past and future damage to Plaintiff's credit

and credit worthiness, past and future mental distress and emotional anguish, and other damages that will be presented to the trier of fact.

190. It is a practice of the Defendant Main Street to maliciously, willfully, recklessly, wantonly and/or negligently ignore and refuse to follow the requirements of the FDCPA and state law.

191. Defendant Main Street knows its conduct is wrong but it has chosen to conduct itself in this wrongful manner as a matter of corporate policy.

192. All actions taken by employees, agents, servants, or representatives of any type for the Defendant Main Street were taken in the line and scope of such individuals' employment, agency or representation.

193. This includes collection counsel for Defendant Main Street who in all ways conducted themselves in the line and scope of their agency and representation of Defendant Main Street.

194. Defendant Main Street had all knowledge that its collection counsel had.

195. All actions taken by the Defendant Main Street were done with malice, were done willfully, and were done with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the FDCPA and/or state law and/or that they knew or should have known that its actions were in reckless disregard of the FDCPA and/or state law.

196. Defendant Main Street has engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and/or credit reports and as such Defendant Main Street is subject to punitive damages and statutory damages and all other appropriate measures to punish and deter similar future conduct by this Defendant and similar companies.

197. Defendant Main Street is liable to Plaintiff through the doctrine of Respondeat Superior for the wrongful, intentional and negligent acts, errors, and omissions done in violation of state and federal law by their collection employees and agents, including but not limited to violations of the FDCPA and Alabama tort law, in its attempts to collect this debt from Plaintiff.

**NEGLIGENT AND WANTON HIRING AND SUPERVISION**

198. Defendant Main Street negligently and/or wantonly hired, retained, or supervised incompetent debt collectors and are thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

**CAUSES OF ACTION**

**COUNT I.**

**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
15 U.S.C. § 1692d**

199. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

24

200. Section 1692d states "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

201. Specifically, paragraphs 2-4, 87, 116, 125-132, 136-141, 143, 150-153, 157, 165-176 support the 1692d claim.

202. As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT II.

## VIOLATIONS OF THE FAIR DEBT COLLECTIONPRACTICES ACT
## 15 U.S.C. § 1692e

203. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

204. Section 1692e states "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."

205. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692e claim.

206.   As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT III.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(2)

207.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

208.   Section 1692e(2) states "The false representation of the character, amount, or legal status of any debt;"

209.   Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692e(2) claim.

210.   As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT IV.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(5)

211.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

212. Section 1692e(5) states "The threat to take any action that cannot legally be taken or that is not intended to be taken."

213. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692e(5) claim.

214. As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT V.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692e(10)

215. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

216. Section 1692e(10) states "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

217. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692e(10) claim.

218. As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT VI.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f

219. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

220. Section 1692f states "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."

221. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692f claim.

222. As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT VII.

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692f(1)

223. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

224. Section 1692f(1) states "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

225.   Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the 1692f(1) claim.

226.   As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT VIII.

## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
## 15 U.S.C. § 1692g

227.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

228.   Section 1692g states "...a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector..."

229.   Specifically, paragraph 142 as Defendant told Plaintiff that Plaintiff only had 14 days to dispute instead of 30 days.

230.   As a result of Defendant Main Street's violations of the FDCPA, Plaintiff is entitled to actual damages; statutory damages; and reasonable attorney's fees, expenses and costs from Defendant Main Street.

## COUNT IX.

## INVASION OF PRIVACY

231.  Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

232.  Alabama law recognizes Plaintiff's right to be free from invasions of privacy and Defendant Main Street violated Alabama state law as described in this Complaint.

233.  Congress explicitly recognized a consumer's inherent right to privacy in collection matters in passing the Fair Debt Collection Practices Act, when it stated as part of its findings:

> **Abusive debt collection practices contribute** to the number of personal bankruptcies, to marital instability, to the loss of jobs, and **to invasions of individual privacy.**

15 U.S.C. § 1692(a) (emphasis added).

234.  Congress further recognized a consumer's right to privacy in financial data in passing the Gramm Leech Bliley Act, which regulates the privacy of consumer financial data for a broad range of "financial institutions" including debt collectors (albeit without a private right of action), when it stated as part of its purposes:

> It is the policy of the Congress that **each financial institution has an affirmative and continuing obligation to respect the privacy of its customers** and to protect the security and

confidentiality of those customers' nonpublic personal information.

15 U.S.C. § 6801(a) (emphasis added).

235. Defendant Main Street intentionally, recklessly, and/or negligently interfered, physically or otherwise, with the solitude, seclusion and/or private concerns or affairs of the Plaintiff, namely, by repeatedly and unlawfully attempting to collect a debt and thereby invaded Plaintiff's privacy.

236. Defendant Main Street intentionally, recklessly, and/or negligently caused emotional harm to Plaintiff by engaging in highly offensive conduct in the course of collecting this debt, thereby invading and intruding upon Plaintiff's right to privacy.

237. Plaintiff had a reasonable expectation of privacy in Plaintiff's solitude, seclusion, private concerns or affairs, and private financial information.

238. The conduct of Defendant Main Street, in engaging in the above-described illegal collection conduct against Plaintiff, resulted in multiple intrusions and invasions of privacy by Defendant Main Street which occurred in a way that would be highly offensive to a reasonable person in that position.

239. This conduct includes the filing of a public lawsuit against Plaintiff.

240. A public lawsuit that has no merit and Defendant Main Street knew at the time it filed the lawsuit that it had no merit, especially since Defendant Main Street knew it had lost the first case.

241. All of the other wrongful acts described in this Complaint demonstrate the wrongful scheme, plan, and design of Defendant Main Street in its campaign of improper debt collection which has led to the Plaintiff's privacy being invaded.

242. As a result of such intrusions and invasions of privacy, Plaintiff is entitled to actual damages in an amount to be determined at trial from Defendant Main Street.

243. All acts of Defendant Main Street were committed with malice, intent, wantonness, and/or recklessness and as such Defendant Main Street is subject to punitive damages.

244. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the Invasion of Privacy claim.

## COUNT X

## NEGLIGENT, WANTON, AND/OR INTENTIONAL HIRING AND SUPERVISION OF INCOMPETENT DEBT COLLECTORS

245. Plaintiff incorporates by reference all of the paragraphs of this Complaint as though fully stated herein.

246. Defendant Main Street's collectors are allowed and encouraged to break the law in order to collect debts.

247. This includes all of the violations of the law described in this Complaint.

248. Defendant Main Street is aware of the wrongful conduct of its collectors.

249. Defendant Main Street negligently, wantonly, and/or intentionally hired, retained, or supervised incompetent debt collectors, who were allowed or encouraged to violate the law as was done to Plaintiff, and Defendant Main Street is thereby responsible to the Plaintiff for the wrongs committed against Plaintiff and the damages suffered by Plaintiff.

## COUNT XI.

## WANTON, MALICIOUS, AND INTENTIONAL CONDUCT

250. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

251. Defendant Main Street had a duty, and assumed a duty, to treat Plaintiff fairly and with reasonable care.

252. Defendant Main Street had a duty, and assumed a duty, to not unreasonably cause harm to Plaintiff.

253. Defendant Main Street acted with malice, wantonness, recklessness, and/or intentional conduct in its dealings with and about Plaintiff as set forth in this Complaint.

254. Defendant Main Street violated all of the duties Defendant Main Street had and such violations were made intentionally, willfully, recklessly, maliciously, and wantonly.

255. It was foreseeable, and Defendant Main Street did in fact foresee it, the actions of Defendant Main Street would lead and did lead to the exact type of harm suffered by Plaintiff.

256. Defendant Main Street acted with malice, wantonness, recklessness, and/or intentional conduct in their dealings with and about Plaintiff as set forth in this Complaint.

257. Defendant Main Street invaded the privacy of Plaintiff as set forth in Alabama law.

258. Such malice, wantonness, recklessness, willfulness, and/or intentional conduct proximately caused the damages set forth in this Complaint.

259. As a result of this conduct, action, and inaction of Defendant Main Street, Plaintiff has suffered damages as set forth in this Complaint.

260. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the Wanton, Malicious, and Intentional Conduct claim.

## COUNT XII

## MALICIOUS PROSECUTION

261. All paragraphs of this Complaint are expressly adopted and incorporated herein as if fully set forth herein.

262. Defendant Main Street knew Plaintiff did not owe this debt to Defendant Main Street as Defendant Main Street lost the 2012 lawsuit against Plaintiff.

263. Defendant Main Street instituted and continued prosecuting the lawsuit against Plaintiff with no reasonable basis to do so.

264. Defendant Main Street filed the lawsuit with no intention of ever proving its case.

265. Defendant Main Street continued to prosecute the case with no intention of ever proving its case.

266. Defendant Main Street filed and used this case as a means of attempting to extort money out of Plaintiff or obtaining a default judgment against Plaintiff if Plaintiff did not answer the suit.

267. Defendant Main Street instituted and continued prosecuting the lawsuit against Plaintiff with malice and with the design and plan that the lawsuit would result in an illegal judgment against the Plaintiff or would cause Plaintiff to pay Defendant Main Street money on a non-existent debt.

268. The malicious plan of Defendant Main Street included the knowledge that the fraudulent judgment would be devastating to Plaintiff's credit report and credit scores and would lead to garnishments and/or seizures of property and the Defendant Main Street tried to accomplish this by the Defendant Main Street's malicious and abusive actions.

269. Throughout the entire illegal lawsuit against Plaintiff, Defendant Main Street knew at all times that there was no basis for the lawsuit and the intent and design of filing the lawsuit and continuing to prosecute the lawsuit was to extort money from the Plaintiff which Defendant Main Street knew it was not entitled to receive.

270. The suit was a time barred suit.

271. The litigation against Plaintiff filed by Defendant Main Street eventually resulted in adjudication in favor of Plaintiff.

272. The illegal and improper actions of the Defendant Main Street constitute malicious prosecution.

273. This is the pattern and practice of Defendant Main Street – to file suits with no basis and no intention of ever proving the case in an attempt to obtain default judgments against Alabama consumers or to obtain settlements from Alabama consumers who do not realize the bogus nature of the suit filed by Defendant Main Street.

274. The Plaintiff suffered past and future emotional distress and monetary loss as a direct and proximate result of Defendant Main Street's abuse of process and malicious prosecution.

275. Specifically, paragraphs 2-4, 87, 116, 125-132, 134, 136-142, 143, 150-153, 157, 165-176 support the Malicious Prosecution claim.

## PRAYER FOR RELIEF

**WHEREFORE**, **PREMISES CONSIDERED,** Plaintiff prays that judgment be entered against all Defendants for all damages allowable (including statutory, actual, compensatory, nominal and punitive the total of which Plaintiff claims more than $350,000.00), costs, expenses, fees, injunctive relief to prevent further violations, and for such other and further relief as may be just and proper.

Respectfully Submitted,

John G. Watts (ASB-5819-t82j)
M. Stan Herring (ASB-1074-n72m)
**Watts & Herring, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
(205) 879-2447
(888) 522-7167 *facsimile*
john@wattsherring.com
stan@wattsherring.com
**Attorneys for Plaintiff**

**PLAINTIFF DEMANDS A TRIAL BY JURY IN THIS CAUSE.**

_____

**Attorney for Plaintiff**

**Serve defendant via certified mail at the following address:**

Main Street Acquisition Corporation
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, Delaware 19801